IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _15-CV-457-CBS_
(To be supplied by the court)

DAVID PEREZ

Plaintiff,

v.

DENVER FIRE DEPARTMENT
CITY AND COUNTY OF DENVER

Defendant,

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, David Perez on behalf of himself, herby brings this Complaint against the Denver Fire Department all referred to collectively herein as "DFD" and the City and County of Denver all referred to collectively herein as "City".

### INTRODUCTION

1. On July 12, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*, establishing the most important civil rights law for people with disabilities in our country's history. On October 13, 1994, Congress enacted the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4335) protect the civilian employment of non-full-time military personnel in the United States

1

(Rev. 07/06)

called to active duty and to all United States uniformed services and their respective reserve components.

2.      Among the primary purposes of the ADA is ensuring that people with disabilities not only receive accommodations but ensure that any information obtained, collected and maintained regarding the medical condition or history of a person is treated as a confidential. A primary purpose of the USERRA is that it protects civilian job rights and benefits for veterans, members of reserve components, and even individuals activated by the President of the United States to provide Federal Response for National Emergencies.

3.      David Perez is a dedicated Firefighter with the DFD, a Reservist in the United States Selected Marine Corps Reserve and a disabled Veteran of the United States Military.

4.      The DFD did not take the proper actions to ensure that the diagnosis and condition of David Perez having Post Traumatic Stress Disorder (PTSD) was safeguarded and kept confidential and that Mr. Perez was not discriminated against due to his condition.

## PARTIES

5.      Plaintiff David Perez ("Mr. Perez") is currently, and at all times relevant to this suit, a resident of the State of Colorado. Mr. Perez has suffered from, been diagnoses with and treated for PTSD relating to his military service and his employment with the DFD and the City.

6.      Defendant DFD employs over 900 paid firefighters supporting daily fire-rescue and medical services and is headquartered in Denver Colorado. Mr. Perez is a full-time paid firefighter with the DFD.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court is invoked pursuant to 28 U.SC. §§ 451, 1331 and 1343, 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976. This action

is authorized and instituted pursuant to Section 107 (a) of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 A, and pursuant to Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) as codified in title 38, U.S.C, section §4311, and pursuant to Employees Benefits as codified in title 20, U.S.C, sections §1002.18-32.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all of the events giving rise to the claims occurred in the District of Colorado.

## ADMINSTRATIVE PROCEDURES

9. All procedural prerequisites for the filing of this suit have been met. Plaintiff filed a Charge of Discrimination alleging Disability Discrimination against the DFD with the Equal Employment Opportunity Commission ("EEOC") on **March 6, 2012** and more than 180 day have elapsed since the date the Commission assumed jurisdiction over the charge.

10. Plaintiff received notice from the EEOC of the right to institute a civil action on **December 4, 2014** under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq*, and, Title V, Section 503 of the Act, 42 U.S.C. 12203, and has filed his Complaint within 90 days of receiving the Notice of the Right to Sue from the EEOC.

## NATURE OF CASE

11. Defendant has discriminated against Plaintiff because of the following:

   a) Discrimination alleging disability discrimination with Employment of an American with Disabilities.

3

    b) Discrimination alleging current military service and the Uniformed Services Employment and Reemployment Rights Act of 1994

12.    Defendant has discriminated against Plaintiff because of the following:

    a) Discloser of confidential information in regards to Plaintiffs disability, medical condition, evaluation.

    b) Discrimination of Plaintiff's active reserve status in the Selected Marine Corps Reserve.

## FACTUAL ALLEGATIONS

13.    Mr. Perez is a Veteran of the United States Armed Forces with service of 8 years active duty in the United States Marine Corps. Mr. Perez served two separate tours on active duty. During Mr. Perez's second tour on active duty, he served two combat deployments to Iraq during Operation Iraqi Freedom (OIF) in 2003 and 2004. Mr. Perez is currently in his third year of service in the Selected Marine Corps Reserve.

14.    Mr. Perez was hired on to the DFD by the City on December 1st, 2006. Mr. Perez met all requirements set forth by the City to become a full-time paid firefighter with the DFD. Mr. Perez works a 48 hr workweek, working 24 hrs shifts with 72 hrs of off time in between work shifts. A 24 hr shift starts at 0730 and ends at 0730 the following day.

15.    On August 17, 2011 Mr. Perez was assigned to Engine Company 9, at Denver Fire Station 9, 4400 Brighton Blvd, Denver Colorado 80216 under the direct supervision of Captain Randy Wells. Around 1232 hrs on August 17, 2011, Mr. Perez and his Engine crew responded to call of an Auto vs Pedestrian accident. Upon arrival, Mr. Perez found a young patient who was hit by a truck. The patient was determined Dead-On-Arrival (DOA) due to severe head trauma. Mr. Perez was emotional disturbed from this incident due to the fact the

patient was close to the same age as his own son and the traumatic incident he just witnessed. His supervisor Captain Randy Wells asked Mr. Perez if he was ok after that call, in route back to the fire station. Mr. Perez responded yes and didn't request any Critical Incident Stress intervention set forth by DFD policy and procedures.

16. Around 1300 on August 17, 2011, monthly Emergency Medical Service (EMS) training was scheduled for that day. This EMS training reviewed the use of field tourniquets and how to apply them on patients if needed. This EMS training was conducted using pictures and stats that were taken from military combat operations from Iraq and Afghanistan during Operation Enduring Freedom. Local, State and National Emergency Response Services use medical resposnes from United States Military combat operations as a training tool to train emergency responders.

17. During the EMS training, Mr. Perez suffered a PTSD trigger were he began to think of his combat tour in Iraq. Fellow firefighter Mike Morris, assigned to Truck 9, noticed a change in Mr. Perez's domineer and made a comment to Mr. Perez about the class and use of tourniquets and asked if he was ok. Mr. Perez then felt he needed to remove myself from the training and quietly left the room. After feeling overwhelmed, Mr. Perez made his way outside to get some fresh air. Firefighter Mike Morris as well as Mr. Perez's supervisor, Captain Randy Wells came outside and confronted Mr. Perez about his situation and enquired about Mr. Perez's condition and if he was ok. Mr. Perez responded that he was ok, and that he just needed some time to let things out.

18. Around 1410 on August 17, 2011 Engine 9, Truck 9 and Chief 2 responded to an odor investigation. It was mentioned to Mr. Perez to stay back and not go on this call due to his current condition. Mr. Perez felt his current condition would not impair his ability to perform his

5

(Rev. 07/06)

duties and went with his Engine Company and on the response call.

19. After returning to the firehouse from the odor investigation, Mr. Perez was approached by his supervisor Captain Randy Wells accompanied by the truck office of Truck 9 Lieutenant Bob Miller in regards to Mr. Perez mental and emotional condition. There was a concern regarding Mr. Perez's ability to perform his duties based off of the previous incidents that occurred earlier on August 17, 2011. After a discussion with Captain Randy Wells and Lt. Bob Miller, Mr. Perez made the decision to go home for the rest of the shift.

20. Prior to Mr. Perez leaving for the remainder of his shift around 1500 on August 17, 2011, Mr. Perez spoke to his crew on Engine 9 along with the crew of Truck 9 with regards to the early events. Mr. Perez spoke about the loss of his fellow Marines during his combat tours and how the combination of the day's events made him emotional and brought back those memories.

21. Prior to Mr. Perez leaving his shift on August 17, 2011, there was verbal agreement between Mr. Perez and Captain Randy Wells, with Lieutenant Bob Miller present, that the earlier incident regarding Mr. Perez would stay in house and on shift; meaning nothing would be said to anyone in the chain of command of Mr. Perez beyond his supervisor, Captain Randy Wells regarding the days incidents.

22. On August 28, 2011, Captain Randy Wells wrote a letter to Assistant Chief Daniel Garcia requesting that Mr. Perez be evaluated for PTSD. Prior to this letter, Mr. Perez never disclosed to the DFD or the City that he was scene, evaluated, diagnosed and/or treated for PTSD by the Veterans Administration (VA) or any other medical authority.

23. As stated in Title I of the ADA, an Employer may not ask job applicants about the existence, nature, or severity of any existing disability. An applicant may be asked about their

6

(Rev. 07/06)

ability to perform specific job functions. A job offer may be conditioned on the results of a medical examination, which Mr. Perez met all job requirements prior to being hired to work for the DFD. At the time Captain Randy Wells wrote the letter requesting the evaluation for PTSD by the DFD, Mr. Perez was then, "Regarded to have such an impairment" and Mr. Perez was then protected under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* with any future events relating to the incident that occurred on August 11, 2011 to include the content of the letter that Captain Randy Wells wrote on August 28, 2011 requesting Mr. Perez be evaluated for PTSD. Any future actions taking regarding the incident that occurred on August 17, 2011 should have been treated in such regards.

24. On September 7, 2011, Mr. Perez received a phone call from Assistant Administration Chief Russ Bray regarding the letter that Captain Wells wrote on August 28, 2011 requesting Mr. Perez be evaluated for PTSD. Mr. Perez met with Administration Chief Tony Berumen and Assistant Administration Chief Russ Bray to discuss the incident that occurred on August 11, 2011. Mr. Perez was informed that Captain Wells had requested this evaluation through a letter. Captain Randy Wells never disclosed to Mr. Perez that he wrote such letter nor did Captain Randy Wells ever state intent to write such letter after Mr. Perez left work early on August 11, 2011.

25. Per a request from the DFD administration and the City, Mr. Perez was asked to conduct a Fit-For-Duty evaluation through the office of Dr. Nicoletti. Though Mr. Perez mentioned to Administration Chief Tony Berumen that he was seeking therapy treatment through the Veterans Administration (VA) and that an additional evaluation was not needed, it was state by Assistant Administration Chief Tony Berumen that they (the DFD) have never had an incident like this before and they (the DFD) didn't know what to do with my situation and that a

Fit-For-Duty evaluation would assist them with there position regarding the incident that occurred on August 11th, 2011 with Mr. Perez. Mr. Perez complied with this request with not hesitation.

26.    The office of Dr. Nicolette and Associates did a Fit-For-Duty assessment on September 28, 2011 and September 29, 2011 with Mr. Perez. Mr. Perez was determined "Fit for Duty with considerations" and was viewed as capable of working in a position that includes the responsibilities of a Firefighter with no restrictions.

27.    On October 1, 2011 Captain Randy Wells had a meeting with firefighters at Station 9 about Mr. Perez. Mr. Perez was not scheduled to work that day and was not present for the meeting Captain Wells had with firefighters of Station 9. The meeting was to discuss Mr. Perez having PTSD and get the opinion of other firefighters in regards to Mr. Perez having PTSD. Captain Randy Wells also informed the firefighters that he submitted a letter with the request that Mr. Perez be evaluated for PTSD. Captain Wells did not inform Mr. Perez that he was having such meeting and Mr. Perez was only notified at home via a phone call by another firefighter that this meeting was taking place.

28.    Do to the current conditions and the unwarranted actions taken by Captain Randy Wells towards Mr. Perez, Mr. Perez agreed to an administrative transfer from Engine Company 9 to Fire Prevention Division, which was offered by the DFD administration. Though the new 5 day, 40 hour work schedule effected the lively hood of Mr. Perez, with the fact that his wife was attending graduate school at the time and there was a need for child care 5 days a week, Mr. Perez took the offer of an administrative transfer to the Fire Prevention Division do to the discrimination and hostile work environment Mr. Perez found himself in while assigned to Engine Company 9 under the supervision of Captain Rand Wells.

29. Mr. Perez work as a Hazards Materials Inspector with the Fire Prevention Division from October 10, 2011 to April 13, 2012. On December 2, 2011, Mr. Perez met with Fire Prevention Division Chief, Joe Gonzales with the intent to turn in his firefighter gear and submit a request for a leave of absence and a letter of resignation. Mr. Perez felt he was wronged with all the actions that took place when he was assigned to Engine Company 9 and Mr. Perez didn't want to find himself in that kind of environment again. Chief Joe Gonzales, a fellow Veteran and Marine, spoke with Mr. Perez and convinced Mr. Perez to stay employed with the DFD. Mr. Perez took the advice of Chief Joe Gonzales and did not submit his letter of resignation.

30. On January 25, 2012, Mr. Perez met with Administration Chief Tony Berumen and Assistant Administration Chief Russ Bray to discuss the incident's that occurred at Station 9 while Mr. Perez was assigned there. The intent of Mr. Perez asking for this meeting was to get clear understanding of the position of the Administration regarding the actions of Captain Randy Wells writing the letter for evaluation of PTSD for Mr. Perez and all the actions that took place after that letter was written. Administration Chief Tony Berumen made clear that Captain Randy Wells was not in the wrong, and that no wrong was done and that no disciplinary action would be taken for his conduct.

31. On April 16, 2012, Mr. Perez started a new assignment to Engine Company 23, at Denver Fire Station 23, 850 S. Federal Denver CO 80219. Lieutenant Scott Reeves was Mr. Perez's direct supervisor. While assigned there, Mr. Perez was preparing to get issued active duty order for a new Military Occupational Specialty (MOS) school for 5 months during the summer of 2013 due to his United Sates Military Reserve obligation with the Selected Marine Corps Reserve.

(Rev. 07/06)

32. On February 23, 2013, Mr. Perez received an unwarranted Internal Correspondence that was written on February 20, 2013 from Administration Chief Tony Berumen stating that Mr. Perez made comments about special favors being made by the DFD Administration and his need for leave during his military training for 5 months. This letter was drafted based off the conversation Administration Chief Tony Berumen had with Engine 23 Captain, Derek Warlum. Mr. Perez brought this letter to the attention of Derek Warlum and Mr. Perez questioned its content and the questioned the conversation that Captain Derek Warlum had with Administration Chief Tony Berumen that would warrant such letter.

33. On March 12, 2013, Mr. Perez had to write a responding Internal Correspondence to refute the letter from Administration Chief Tony Berumen discrediting the accusation made in the initial letter from Administration Chief Tony Berumen to Mr. Perez on February 20, 2013. Captain Derek Warlum was unhappy with the position that Mr. Perez took with initial Internal Correspondence. Captain Warlum had a discussion with Lt Reeves about his position and made several statements in those regards. It was mentioned to Mr. Perez that Captain Derek Warlum questioned Mr. Perez's position as a firefighter and had stated "what does he want to do, be a firefighter or be a reservist" which violates the USERRA Act of 1994 (as codified in title 38, United States Code, section §4311 and Employees Benefits as codified in title 20, United States Code, sections §1002.18-32

34. The MOS school that Mr. Perez was supposed to attend was postponed until the fall of 2014. Mr. Perez found himself again in a hostile work environment due to his military status and made another personal transfer request to Engine Company 12, at Denver Fire Station 12, 2575 Federal Denver CO 80211 where he is currently assigned as of date.

10

(Rev. 07/06)

## FIRST CLAIM FOR RELIEF

(Violations of the American with Disabilities Act Amendments Act)

35. Plaintiff realleges and incorporates by reference paragraphs 1-34 set forth above in this Complaint as if fully set forth herein.

36. Because Plaintiff personal and confidential information was disclosed with out permission and not with the articles of the American with Disabilities Act Amendments Act, the American with Disabilities Act Amendments Act amended (hereinafter referred to as the "ADAAA"), applies.

37. Plaintiff was identified, evaluated and diagnosed with having PTSD and Found Fit For Duty.

38. Plaintiff is therefore an individual with disabilities within the meaning of the ADAAA. 42 U.S.C. § 12102 (2). Plaintiff was also "regarded as" disabled by Defendant. 42 U.S.C. § 12102(3)(C)

(Violations of the Uniformed Services Employment and Reemployment Rights Act)

39. Plaintiff is currently serving in the Selected Marine Corps Reserve and is protected against discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) as codified in title 38, United States Code, section §4311 and Employees Benefits as codified in title 20, United States Code, sections §1002.18-32.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendant;

3. That this Court declare the actions of Defendant described in this Complaint to be in violation of Title I of the Americans with Disabilities Act, as amended and in violation of the Uniformed Services Employment and Reemployment Rights Act;

4. That this Court award Plaintiff appropriate relief at law and equity, including but not limited to back pay and all other make whole relief, including consequential/compensatory damages.

5. That this Court grant compensatory and consequential damages against Defendant, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendant, as allowed by law:

6. That this Court grant exemplary and/or punitive damages as allowed by law;

7. That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

8. That his Court award pre-judgment and post-judgment interest at the lawful rates; and

9. That his Court award such additional or alternative relief as may be just, proper and equitable.

PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE.

Date: 3/4/2015

_____
(Plaintiff's Original Signature)

576 W. 91st Cir
(Street Address)

Thornton CO 80260
(City, State, ZIP)

303 507 5399
(Telephone Number)

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s):<br>**CHARGE NUMBER** |
|---|---|---|
| | ☐ FEPA<br>■ EEOC | |

Colorado Civil Rights Division and EEOC
(State or local Agency, if any)

| Name (Indicate Mr., Ms., Mrs.)<br>Mr. David Perez | Home Phone No. (Incl Area Code)<br>(303) 507-5399 | Date of Birth |
|---|---|---|
| Street Address<br>576 W. 91st Circle | City, State and ZIP Code<br>Thornton, CO 80260 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS BELOW.)

| Name<br>Denver Fire Department | No. Employees, Members | Phone No. (Include Area Code)<br>(720) 913-3473 |
|---|---|---|
| Street Address<br>745 West Colfax Ave. | City, State and ZIP Code<br>Denver, CO 80204 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ■ DISABILITY  ☐ OTHER (Specify below.) | Earliest: 9/7/2011  Latest: 10/1/2011<br>☐ Continuing Action |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, David Perez, on behalf of myself and others similarly situated, allege the following:

I. I have worked for the Denver Fire Department since December 1, 2005. Throughout my employment, I performed my job duties satisfactorily.

II. PERSONAL HARM: The Denver Fire Department disclosed confidential medical information and has subjected me to discrimination because of a real and/or perceived disability. After I returned from two combat tours with the United States Marine Corp, I was diagnosed with Post Traumatic Stress Disorder (PTSD). I did not disclose my confidential medical condition to anyone at the Denver Fire Department. After once visibly suffering from PTSD in the workplace, I was told I should transfer from the firehouse into a support division of the fire department. Captain Wells also held a meeting in which he and other station members discussed my mental health.

III. DISABILITY DISCRIMINATION: I have had confidential medical information disclosed by a supervisor and have been discriminated against based on a real and/or perceived disability (PTSD) in violation of the Americans with Disability Act, 42 U.S.C. § 12101, et. seq. ("ADA") and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§12101, et seq.

*PARTICULARS CONTINUED ON FOLLOWING PAGES*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br>4/6/2012<br>Date  Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year)<br>MAR 6, 2012<br>My Commission expires: 7-20-2012 |

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: Agency(ies) Charge No(s):<br>☐ FEPA<br>■ EEOC      PAGE 2 |
|---|---|

Colorado Civil Rights Division and EEOC
(State or local Agency, if any)

1. From June 1994 through June 1998, and from September 2001 through August 2005, I was an active duty member of the United States Marine Corp. Between September 2001 and August 2005, I served during two combat tours. After I returned from my second tour, I began attending counseling sessions at the Office of Veterans' Affairs Hospital. (VA). I was eventually diagnosed with Post Traumatic Stress Disorder (PTSD).

2. On December 1, 2005, I was hired as a firefighter for the Denver Fire Department (DFD). On February 15, 2011, Captain Wells became my supervisor.

3. On August 17, 2011, my company was dispatched to an auto vs. pedestrian accident. When I arrived, I found a fourteen (14) month old boy who had been hit by a truck. The boy was dead on arrival.

4. Later that day, we had an EMS training discussing how to apply tourniquets. As part of the presentation, the trainer presented conditions and statistics taken from the military operations from Operation Iraqi Freedom. This training, in combination with the death of the young boy, triggered my PTSD. I began to think about my combat tour in Iraq and began feeling overwhelmed. I left the room. Mike Morris assisted me to his room and offered to get me some water. I then went outside, and Morris told me had informed Captain Wells what had happened. Captain Wells gave me counsel and advice.

5. After this conversation, we were called to an odor investigation. I was told to stay back, but I felt fine and went with my company. I did not have any more symptoms that day.

6. Around three o'clock that afternoon, I was approached by Captain Wells and Lieutenant Milers about the earlier incident. They asked me about what had happened, and I told them I was feeling fine and that I wanted to stay the rest of the shift. Because I realized that the incident had created concern, I decided to go home that day. I informed Captain Wells that that I was going home on Non Line of Duty leave for personal reasons. ("NLOD"). Captain Wells informed District Chief Garcia.

7. Before I left on August 17, I told some firefighters in my company about my experience in Iraq and the feelings connected with losing so many Marines in my unit. I explained that the earlier incident with the child had brought up some of those feelings. I wanted to provide some context for my earlier behavior. At no point during this discussion did I mention my diagnosis or treatment with the VA. I heard from Lt.

**PARTICULARS CONTINUED ON FOLLOWING PAGE**

[Notary seal: FRAN COOKE NOTARY]

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>4/6/2012<br>Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year)    MAR 6, 2012<br>My commission expires: 7-20-2012 |

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>■ EEOC | PAGE 3 |
| Colorado Civil Rights Division and EEOC<br>(State or local Agency, if any) | | |

Miller that he had suggested to Captain Wells to inform District Chief Garcia about the incident due to liability concerns.

8. The next day, August 18, 2011, I told Lt. Miller that I would not be into work for my next scheduled shift on August 20. I did not go to work on August 20, 2011.

9. On August 23, 2011, Captain Wells was the acting District Chief. He called me into his office and claimed that I did not tell him I was taking the day off on August 20. I explained that August 18 was Captain Wells' "Kelly Day" (day off), and I informed the Lt. Miller because he was the officer on duty that day. Captain Wells called me selfish and said that I was disrespectful.

10. On August 28, 2011, Captain Wells wrote Chief Tony Beruman a letter about the incident on August 17. I did not learn about this letter until a later date.

11. On September 7, 2011 I received a phone call from Chief Russ Bray informing me of a firefighter at my station who was concerned about my condition. I told him about the events of August 17, and a few days later, I met with Administration Chief Tony Beruman, as well as Chief Russ Bray. Chief Beruman suggested that I be removed from the Firehouse and look for alternative positions within the department. It was also suggested that I see the City Psychologist and get a fit for duty evaluation.

12. On September 28, 2011, I met with a doctor for an evaluation. Later that day, Captain Wells said he would show me the letter he had written detailing the August 17 incident, but I said that I no longer wanted to see it. We had heated discussion about him sending the letter.

13. On October 1, 2011, Captain Wells had a meeting with the members of the station where I was not present. He spoke to the members of the station about the argument he and I had on September 28. *At this time, Captain Wells disclosed my PTSD diagnosis to the other firefighters, and was overheard saying, "I want to discuss David Perez's PTSD situation and get your opinion."*

14. I subsequently moved to the Fire Prevention Department.

Captain Wells' discriminatory treatment of me, including the unauthorized disclosure of my confidential medical condition, has caused me understandable emotional distress. I am also concerned that his disclosure may impact my opportunities for advancement.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br>4/6/2014<br>Date       Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year)  MAR 6, 2012<br>My commission expires: 7-20-2012 |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Denver Field Office

303 East 17th Avenue, Suite 410
Denver, CO 80203
(303) 866-1300
TTY (303) 866-1950
FAX (303) 866-1085
1-800-669-4000

David Perez
576 W. 91st Circle
Thornton, CO  80260

Re:  David Perez v. Denver Fire Department
     EEOC Charge Number: 541-2012-01621

Dear Mr. Perez:

The Commission has received your request for a Notice of Right to Sue in the above-referenced charge.  Your request has been forwarded to the U. S. Department of Justice for action.  That agency will act on your request as soon as possible and issue the Notice directly to you.

If you have any questions, please contact Ms. Holly B. Romero, Enforcement Supervisor, at (303) 866-1341.

On Behalf of the Commission:

September 24, 2014
Date

Holly Romero for
John C. Lowrie
Director, Denver Field Office

cc:  Diane S. King, Attorney



U.S. Department of Justice
Civil Rights Division

---

CERTIFIED MAIL
2014 3357

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 04, 2014

Mr. David Perez
c/o Diane S. King, Esquire
Law Offices of King & Greisen
1670 York Street
Denver, CO 80206

Re: EEOC Charge Against Denver Fire Dept.
No. 541201201621

Dear Mr. Perez:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Denver District Office, Denver, CO.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Acting Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Denver District Office, EEOC
Denver Fire Dept.