IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00457-CBS

DAVID PEREZ,
    Plaintiff,
v.

DENVER FIRE DEPARTMENT
CITY AND COUNTY OF DENVER,
    Defendant.

ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

Magistrate Judge Shaffer

    This matter comes before the court on a Motion to Dismiss (Doc. 7) filed on July 23, 2015, by Defendant City and County of Denver (the "City"). Pursuant to the Order of Reference dated January 26, 2016, this civil action was referred to the Magistrate Judge for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and Title 28 U.S.C. § 636(c). (*See* Doc. 23). This court has carefully considered the motion and related briefing, the entire case file, and applicable case law. For the following reasons, the court grants in part and denies in part the motion.

**BACKGROUND**

    David Perez ("Plaintiff"), appearing *pro se*, brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*, and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311. The action arises out of Mr. Perez's employment with the Denver Fire Department ("DFD"). Plaintiff seeks a declaratory judgment, as well as compensatory and consequential damages.

    Plaintiff has been employed by the City as a full-time paid firefighter since December 1, 2006. *Id.* at ¶¶ 14, 34. Prior to Plaintiff's employment with DFD, he served 8 years on active

1

duty with the United States Marine Corps. *Id*. at ¶ 13. Plaintiff is currently in his third year of service in the Selected Marine Corps Reserve (the "Reserves"). *Id*.

On August 17, 2011, Plaintiff was assigned to Engine Company 9 at Denver Fire Station 9 ("Station 9"), under the supervision of Captain Randy Wells. *Id.* at ¶ 15. Plaintiff and his crew were dispatched in response to a truck fatally running over a young child. *Id.* After the call, Captain Wells asked Plaintiff if he was okay and Plaintiff said he was. *Id*.

Later that day, Engine Company 9 attended an EMS training on the application of tourniquets in the field. *Id.* at ¶ 16. The training materials included pictures and statistics from military combat operations in Iraq and Afghanistan. *Id*. During the training, Plaintiff became visibly upset and left the room. *Id.* at ¶ 17. Firefighter Mike Morris and Captain Wells followed Plaintiff outside and asked if he was okay. *Id*. Plaintiff said he was but "just needed some time to let things out." *Id*. After the training, Captain Wells and Lieutenant Bob Miller approached Plaintiff to discuss his ability to perform his duties considering the day's events. *Id*. at ¶ 19. Plaintiff decided to go home for the remainder of his shift but first met with the crew of Engine 9 and Truck 9 to explain that he had been upset earlier that day because of the "loss of his fellow Marines during his combat tours and how the combination of the day's events made him emotional and brought back those memories." *Id.* at ¶ 20.

On August 28, 2011, Captain Wells wrote a letter without Plaintiff's knowledge to Assistant Chief Daniel Garcia requesting that Plaintiff be evaluated for Post-Traumatic Stress Disorder ("PTSD"). *Id.* at ¶ 22. Prior to this request, Plaintiff had "never disclosed to the DFD or the City that he was scene [sic], evaluated, diagnosed and/or treated for PTSD by the Veterans Administration [sic] (VA) or any other medical authority." *Id.* On September 7, 2011, DFD Administration contacted Plaintiff regarding the request for evaluation. *Id.* at ¶ 24. At that time,

2

Plaintiff disclosed to Administration Chief Tony Berumen that he was "seeking therapy treatment through the [VA] and that an additional evaluation was not needed." *Id.* at ¶ 25. On September 28-29, 2011, Plaintiff underwent a "Fit-For-Duty" evaluation which determined that he was "fit for duty with considerations." *Id.* at ¶ 26. On October 1, 2011, a day which Plaintiff was not scheduled to work, Captain Wells convened a meeting with the firefighters at Station 9 allegedly "to discuss [Plaintiff] having PTSD and get the opinion of other firefighters in regards to [Plaintiff] having PTSD." *Id.* ¶ 27. Plaintiff further claims that Captain Wells informed the firefighters at that meeting that he had submitted a letter requesting Plaintiff be evaluated for PTSD. *Id.*

Plaintiff accepted an administrative transfer from Engine Company 9 to the Fire Prevention Division where he worked as a Hazards Material Inspector from October 10, 2011 to April 13, 2012. *Id.* at ¶¶ 28-29. On December 2, 2011, Plaintiff intended but ultimately reconsidered resigning from his job because he "felt he was wronged with all the actions that took place when he was assigned to Engine Company 9 and [he] didn't want to find himself in that kind of environment again." *Id.* at ¶ 29.

On April 16, 2012, Plaintiff started a new assignment at Engine Company 23, headed by Captain Derek Warlum and with Lieutenant Scott Reeves as his direct supervisor. *Id.* at ¶ 31. On February 20, 2013, Administration Chief Tony Berumen wrote an Internal Correspondence letter to Plaintiff that concerned information provided by Captain Warlum regarding Plaintiff's "comments about special favors being made by DFD Administration and his need for leave during his [Reserve] military training for 5 months." *Id.* at ¶ 32. Plaintiff responded in a subsequent Internal Correspondence letter by "[discrediting] the accusations made in the initial letter." *Id.* After Plaintiff disputed the allegations, he learned of a conversation between

Lieutenant Reeves and Captain Warlum in which they "questioned [Plaintiff's] position as a firefighter and had stated 'what does he want to do, be a firefighter or be a reservist.'" *Id.* at ¶ 33. Plaintiff subsequently requested a transfer to Engine Company 12, where he is currently assigned. *Id.* at ¶ 34.

In the Complaint, Plaintiff contends that Defendant violated ADA § 102(d), 42 U.S.C. § 12112(d), by disclosing confidential medical information concerning his PTSD condition during a meeting with Station 9 firefighters convened two days after Plaintiff completed a "Fit-for-Duty" evaluation. (Doc. 1 at ¶¶ 12, 27). Plaintiff also alleges that his supervisor's comment, "what does he want to do, be a firefighter or be a reservist," violated USERRA § 4311, which prohibits discrimination on the basis of military service. *Id.* at ¶ 32. In its Motion to Dismiss, Defendant argues that DFD communicated medical information that Plaintiff voluntarily disclosed outside the context of an employment-related medical examination or inquiry, thus shielding the City from liability under ADA §102(d). (Doc. 7 at 4). Defendant further argues that Plaintiff's USERRA claim should be dismissed because Plaintiff fails to allege an adverse employment action in the Complaint, maintaining that "a single remark related to Plaintiff's military service is not an adverse employment action as contemplated by USERRA." *Id.* at 8. Similarly, Defendant argues that Plaintiff fails to allege a hostile work environment claim because "a single remark from a single person in command staff" does not meet the severity or pervasiveness standard. *Id.*

## ANALYSIS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges

facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Perez is not an attorney, his pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (19972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*.  It is the responsibility of the pro se plaintiff to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998).  This court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated General Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### A. ADA Claim

The Court concludes that at this stage of litigation, Plaintiff has sufficiently alleged that his employer improperly disclosed confidential medical information in violation of ADA § 102(d). Section 102(d) of the ADA governs "medical examinations and inquiries." 42 U.S.C. § 12112(d). That section applies to inquiries made at three distinct phases: (1) pre-employment; (2) post-offer; and (3) during the employment relationship. *Id.*; *E.E.O.C. v. C.R. England, Inc.*, 644

F.3d 1028, 1046 (10th Cir. 2011). During the employment relationship, employers are prohibited from making disability-related inquiries of employees, unless the inquiry is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). This provision applies to all employees rather than just qualified individuals with disabilities. *Roe v. Cheyenne Mountain Conference Resort, Inc.* 124 F.3d 1221, 1229 (10th Cir. 1997).

All medical information obtained as a result of an inquiry permitted under ADA § 102(d) must be kept confidential and can only be disclosed to a limited group of individuals, such as the employee's supervisors or managers. 42 U.S.C. § 12112(d)(4)(C); 29 C.F.R. § 1630.14. A disclosure of this information in violation of § 102(d) gives rise to a claim under the ADA. *C.R. England, Inc.*, 644 F.3d at 1046. However, an employee's voluntary disclosure of medical information outside the context of an authorized employment-related medical inquiry is not protected under § 102(d). *Id.* at 1047. Additionally, the ADA requires a plaintiff to present evidence of a tangible injury legally and proximately caused by a technical violation of § 102(d). *See Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 963 (10th Cir. 2002) (citing *Griffin v. Steeltek, Inc.*, 261 F.3d 1026. 1028-29 (10th Cir. 2001)).

1. Authorized Medical Inquiry

In order for a disclosure to be confidential under § 102(d), it must be obtained through an authorized medical inquiry rather than voluntarily disclosed by the employee. In determining whether a disclosure is voluntary, courts have focused on which party initiates the employee's actual disclosure of medical information. *E.E.O.C. v. Thrivent Fin. for Lutherans*, 795 F. Supp. 2d 840, 845 (E.D. Wis. 2011) *aff'd* 700 F.3d 1044 (7th Cir. 2012); *compare Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (concluding employee's disclosure made "in confidence" was still voluntary when it was not done pursuant to a FMLA request nor in response to specific

questioning), *and Sherrer v. Hamilton County Bd. of Health*, 747 F. Supp. 2d 924, 933-34 (S.D. Ohio 2010) (concluding employer's question, "Is everything okay?" did not rise to the level of a medical inquiry), *and Ross v. Advance Am. Cash Advance Centers, Inc.*, 605 F. Supp. 2d 1025, 1032-33 (E.D. Ark. 2009) (concluding employee's disclosure was voluntary when it was done to explain why she requested time off rather than pursuant to an inquiry into her ability to perform job-related functions); *with Doe v. U.S. Postal Serv.*, 317 F. 3d 339, 345 (D.C. Cir. 2003) (concluding employer made a medical inquiry when it threatened employee with discipline unless he completed a medical-leave form explaining the nature of his medical condition), *and Kingston v. Ford Meter Box Co.*, No. 3:07-CV-270 RM, 2009 WL 981333, at *11 (N.D. Ind. Apr. 10, 2009) (concluding employee's disclosure was voluntary when he disclosed his medical condition prior to a discussion with employer about his need for reasonable accommodations). Fitness for duty exams are considered equivalent to medical examinations under this provision. *See* 29 C.F.R. Pt. 1630, App. § 1630.13(b); *Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 293-94 (N.D.N.Y. 2003).

Here, Captain Wells formally requested the Fit-For-Duty evaluation as a result of the August 17, 2011 incident when Plaintiff left work early after becoming visibly upset while performing routine job tasks that caused him to reflect on his military service. (Doc. 1 at ¶¶ 19, 22). A Fit-For-Duty evaluation clearly constitutes an authorized employment-related medical inquiry, which triggers the confidentiality requirement. In response to the evaluation request, Plaintiff disclosed his PTSD condition to the DFD Administration Chief, as well as during the subsequent evaluation itself. *Id.* at ¶¶ 25-6. Therefore, the Plaintiff has sufficiently alleged that the medical information obtained by DFD was subject to the confidentiality requirement.

### 2. Disclosure of Confidential Medical Information

Although Plaintiff's factual allegations are barely sufficient to assert an improper disclosure of confidential medical information, the Court must view the allegations contained in the *pro se* Complaint in the light most favorable to the non-moving party. While the Complaint does not explicitly state that Captain Wells relied on the information obtained through the exam, it does allege that Captain Wells convened the meeting with Station 9 firefighters two days after Plaintiff completed the Fit-For-Duty evaluation. *Id.* at ¶ 27. Additionally, the Complaint alleges the meeting was called "to discuss [Plaintiff] having PTSD and get the opinion of other firefighters in regards to [Plaintiff] having PTSD." *Id.* The temporal proximity of the exam and the meeting coupled with the alleged purpose of the meeting provides a plausible inference that Captain Wells disclosed information obtained through the authorized medical inquiry.

Defendant's contention that Plaintiff voluntarily disclosed his PTSD condition during the conversation with Station 9 firefighters on August 17, 2011 is not supported by the Complaint. Plaintiff specifically alleges in the Complaint that prior to being made aware of the evaluation request he never discussed his PTSD condition with DFD or the City. *Id.* at ¶ 22. Additionally, the Complaint does not allege that during the conversation Plaintiff specifically used the term "PTSD" or revealed his medical diagnosis. *Id.* at ¶ 20. Furthermore, the manner in which Captain Wells learned of Plaintiff's medical condition is a question of fact not appropriate for resolution on a motion to dismiss. Plaintiff has sufficiently alleged that Defendant illegally disclosed his confidential medical information in violation of the confidentiality provision of the ADA.

3. <u>Tangible Injury</u>

A plaintiff must also allege a tangible injury resulting from the disclosure. Again, the Court notes the sparseness of the Complaint's factual allegations. However, the Court determines that this aspect of the claim is best analyzed on a fuller factual record.

"Injury-in-fact encompasses both actual damages in the form of emotional, pecuniary, compensative, or otherwise, as well as the presence of a continuing illegal practice." *Green v. Joy Cone Co.,* 278 F. Supp. 2d 526, 537 (W.D.Pa.2003) (quoting *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001)). Courts have held that the tangible injury requirement is met whenever an articulable injury can be identified. *See, e.g., E.E.O.C. v. Ford Motor Credit Co.*, 531 F. Supp. 2d 930, 942 (M.D. Tenn. 2008) (concluding that Plaintiff demonstrated a tangible injury when he took a leave of absence after finding out about the disclosure and admitted to suffering shame, embarrassment and depression as a result of the disclosure); *Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 790 (N.D. Ind. 2014) (concluding on a motion to dismiss that Plaintiff satisfied the tangible injury requirement when he alleged that as a result of the disclosure prospective employers refused to hire him and he suffered emotional injury); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 710-11 (E.D. La. 2013) (concluding that a tangible injury could not be found when Plaintiff failed to specify how he was damaged by the disclosure of his medical information).

Here, the Complaint alleges that the fire station became a "hostile work environment" for Plaintiff after Captain Wells held the meeting with Station 9 firefighters. *Id.* at ¶ 20. Additionally, the Complaint alleges that the "current conditions and the unwarranted actions taken by [Captain Wells]" prompted Plaintiff to accept a transfer to a support division even though the work schedule was less desirable. *Id.* at ¶ 28. The Complaint further alleges that on

December 2, 2011, Plaintiff intended but ultimately reconsidered resigning from his job because he "felt he was wronged with all the actions that took place when he was assigned to Engine Company 9 and [he] didn't want to find himself in that kind of environment again." *Id.* at ¶ 29. Therefore, Plaintiff has sufficiently alleged that the disclosure caused him a tangible injury.

### B. USERRA Claim

Plaintiff has failed to sufficiently allege either that his employer discriminated against him on the basis of his military service or that his employer's conduct created a hostile work environment. Section 4311 of USERRA prohibits employment discrimination against service members based on their military service. *See* 38 U.S.C. § 4311(a). USERRA must be broadly construed in favor of its military beneficiaries. *Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1206-07 (D. Colo. 2008) (citing *Hill v. Michelin N. Am., Inc.,* 252 F.3d 307, 313 (4th Cir.2001)). The anti-discrimination subsection, § 4311(a), provides:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation

38 U.S.C. § 4311(a). An adverse employment action under USERRA imposes the same materiality requirement found in other civil rights statutes addressing employment discrimination. *See e.g.*, *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009) ("There is no reason to understand 'adverse employment action' differently in the USERRA context."). In the Tenth Circuit, to satisfy the materiality requirement, an adverse employment action must have caused more than "*de minimis* harm" to or a "*de minimis* impact" upon an employee's job

11

opportunities or status. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (quoting *Hillig v. Rumsfeld,* 381 F.3d 1028, 1033 (10th Cir.2004)).

While the Tenth Circuit has not addressed whether USERRA provides a cause of action for hostile work environments, other courts who have confronted the question have found that USERRA does provide for a hostile work environment cause of action analogous to the one authorized by Title VII. *See, e.g., Otero v. New Mexico Corr. Dep't*, 640 F. Supp. 2d 1346, 1358 (D.N.M. 2009); *Vickers v. City of Memphis*, 368 F. Supp. 2d 842, 845 (W.D. Tenn. 2005) (concluding that hostile work environment claims falls under the broad interpretation of the term "benefit"). "To succeed on a hostile work environment claim, [plaintiff] must offer evidence that defendants' conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Conners v. Billerica Police Dep't*, 679 F. Supp. 2d 218, 227 (D. Mass. 2010). When evaluating whether a work environment is "hostile" or "abusive" courts look to factors such as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Conners*, 679 F. Supp. 2d at 228 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).

Here, the Complaint does not allege that Plaintiff was terminated or that the Internal Correspondence letter was a disciplinary action; indeed, Plaintiff is still employed as a firefighter with DFD. *Id.* at ¶ 34. Additionally, the Complaint does not allege any facts that suggest Defendant attempted to deny Plaintiff reemployment after his upcoming military training, a promotion, or any benefit of employment, through the Internal Correspondence letter or any other conduct. *Id.* at ¶¶ 31-4. In short, Plaintiff has failed to allege sufficient facts to establish Defendant discriminated against him based on his military service.

Also, the Complaint fails to provide any factual allegations to support a hostile work environment claim under any of the previously mentioned factors. The Complaint only references two instances (the Internal Correspondence letter and Captain Warlum's single statement) where Plaintiff's reservist status was directly at issue. *Id.* at ¶¶ 32-3. Plaintiff received the Internal Correspondence letter almost a full year after starting his assignment under Captain Warlum's supervision. *Id.* at ¶¶ 31-2. The Complaint does not allege that Plaintiff suffered any disciplinary action as a result of receiving the letter. *Id.* at ¶¶ 31-4. Additionally, the Complaint only alleges one negative statement made by Captain Warlum about Plaintiff's reservist status. *Id.* at ¶ 33. The Complaint does not allege facts that suggest Plaintiff felt physically threatened or humiliated by Captain Warlum's statement. *Id.* Moreover, although the Complaint states Plaintiff submitted another personal transfer as a result of the environment, it does not allege that Plaintiff did so because the environment unreasonably interfered with Plaintiff's work performance. *Id.* at ¶ 34. As a result, Plaintiff has failed to allege sufficient facts to establish that Defendant's conduct was so severe and pervasive to constitute a hostile work environment.

Consequently, Plaintiff has failed to allege a USERRA violation; the court, therefore, concludes that Defendant's motion to dismiss Plaintiff's USERRA claim for failure to state a claim should be granted.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion to Dismiss (Doc. 7) is GRANTED in part and DENIED in part. Plaintiff's ADA claim will proceed and his USERRA claim is dismissed.

DATED at Denver, Colorado, this 26th day of January, 2015.

BY THE COURT:

s/Craig B. Shaffer_____
United States Magistrate Judge