IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00457-CBS

DAVID PEREZ,

        Plaintiff,

v.

DENVER FIRE DEPARTMENT, and
CITY AND COUNTY OF DENVER,

        Defendants.

---

**MEMORANDUM OPINION REGARDING DEFENDANT'S
FOR SUMMARY JUDGMENT and
PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COMPLAINT**

---

Magistrate Judge Shaffer

       This Memorandum Opinion addresses the following motions:  (1) Defendant City and County of Denver's Motion for Summary Judgment (doc. #37) and (2) Plaintiff David Perez's Request for Leave of Court to Amend Complaint (doc. #45).  Both of these motions have been fully briefed.  The parties consented (doc. #22) to the magistrate judge's jurisdiction to "conduct all further proceedings in this civil action, including trial, and to order the entry of a final judgment," pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2.  Accordingly, the case was referred to this court on January 26, 2016.  After carefully considering the parties' briefs and attached exhibits, the entire case file, and the applicable law, this court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for leave to amend his Complaint.

## PROCEDURAL BACKGROUND

Mr. Perez commenced this action on March 4, 2015 with the filing of a *pro se* Complaint (doc. #1) that asserted claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Uniformed Services Employment and Reemployment Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4335.  Mr. Perez asserts that he had been employed by the City and County of Denver as a full-time paid firefighter since December 1, 2006, and that prior to his employment with the Denver Fire Department, he served on active duty with the United States Marine Corps for eight years.  Plaintiff states that he is still serving in the Selected Marine Corps Reserve.  In his Complaint, Mr. Perez contends that Defendant City and County of Denver violated ADA § 12112(d) by disclosing confidential medical information to his co-workers.  *See* Complaint, at ¶¶ 12, 27.  Plaintiff also alleged that his supervisor violated USERRA § 4311, which prohibits discrimination on the basis of military service.  *Id.* at ¶ 32.

On January 26, 2016, this court entered an Order (doc. #24) granting in part and denying part a Motion to Dismiss (doc. #7) filed by Defendant City and County of Denver.[1]  On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court is required to "view the allegations contained in the *pro se* Complaint in the light most favorable to the non-moving party."  However, I observed that "Plaintiff's factual allegations [in his Complaint] are barely sufficient to assert an improper disclosure of confidential medical information."

---

[1]This court initially addressed Defendant's motion in an Order entered on December 22, 2015.  I vacated that Order on January 15, 2016 and reinstated Defendant's motion to dismiss when the parties failed to file the required Consent/Non-Consent form in a timely manner.  *See* Order Withdrawing Order (doc. #19).  After the parties formally consented to magistrate judge jurisdiction on January 25, 2016 (doc. #22), the court re-issued its Order Regarding Defendant's Motion to Dismiss (doc. #24) on January 26, 2016.

> Defendant's contention that Plaintiff voluntarily disclosed his PTSD condition during the conversation with Station 9 firefighters on August 17, 2011 is not supported by the Complaint. Plaintiff specifically alleges in the Complaint that prior to being made aware of the evaluation request he never discussed his PTSD condition with DFD or the City. Additionally, the Complaint does not allege that during the conversation Plaintiff specifically used the term "PTSD" or revealed his medical diagnosis. Furthermore, the manner in which Captain Wells learned of Plaintiff's medical condition is a question of fact not appropriate for resolution on a motion to dismiss. Plaintiff has sufficiently alleged that Defendant illegally disclosed his confidential medical information in violation of the confidentiality provision of the ADA.

*See* Order Regarding Defendant's Motion to Dismiss (doc. 16) at 9 (internal citations omitted).

Accordingly, the court declined to dismiss Plaintiff's ADA claim.

Mr. Perez's second claim did not fair as well. Section 4311 of USERRA prohibits employment discrimination against service members based on their military service, *see* 38 U.S.C. § 4311(a), and provides for a hostile work environment cause of action analogous to the one authorized by Title VII. *See, e.g., Otero v. N.M. Corr. Dep't*, 640 F. Supp. 2d 1346, 1358 (D.N.M. 2009); *Vickers v. City of Memphis*, 368 F. Supp. 2d 842, 845 (W.D. Tenn. 2005) (concluding that hostile work environment claims fall under the broad interpretation of the term "benefit"). But an adverse employment action under USERRA imposes the same materiality requirement found in other civil rights statutes addressing employment discrimination. *See, e.g., Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009) ("There is no reason to understand 'adverse employment action' differently in the USERRA context."). This court concluded that Mr. Perez had not alleged sufficient facts to establish that Defendant discriminated against him based on his military service, and failed to provide any factual allegations to support a hostile work environment claim. Therefore, I concluded that Plaintiff had not alleged a cognizable claim for relief under USERRA.

3

On January 25, 2016, counsel entered an appearance on behalf of Mr. Perez.  That same day, the court held a status conference with Plaintiff's counsel in attendance.  The court advised that if Mr. Perez wished to file an amended complaint in light of my recently vacated December 22, 2015 Order, that pleading should be submitted by February 10, 2016.  In the absence of an amended complaint, the court directed the parties to submit a proposed Fed. R. Civ. P. 16 scheduling order by February 15, 2016.  Plaintiff did not file an amended complaint by the prescribed February 10, 2016 deadline.

The court held a Rule 16 scheduling conference on February 18, 2016.  At that time, the court set a fact discovery deadline of June 30, 2016[2] and a dispositive motion deadline of August 1, 2016.  The parties' proposed scheduling order did not request, and the court did not set, a new deadline for moving to amend the Complaint.  On June 7, 2016, the parties filed a joint motion for a two-week extension of the discovery deadline.  I granted that motion on the same day and extended the fact discovery deadline to July 14, 2016.  On July 26, 2016, Defendant City and County of Denver filed its pending motion for summary judgment.  On August 5, 2016, Plaintiff's counsel filed an Unopposed Motion to Withdraw (doc. #41) stating, in part, that "Plaintiff has requested that he be permitted to represent himself *pro se*, and has discharged counsel."  The court granted that motion on August 8, 2016.[3]  Mr. Perez filed his Opposition to Defendant's Motion for Summary Judgment (doc. # 44) on August 16, 2016 and a Motion to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment (doc. #46) on

---

[2]With the parties' concurrence and shared desire to control costs, the court stayed all expert discovery pending a decision on any dispositive motions.

[3]On September 21, 2016, a new attorney entered his appearance on behalf of Mr. Perez.

August 22, 2016.  Mr. Perez also filed a Declaration in Support of Opposition to Defendant's Motion for Summary Judgment (doc. #52) on September 9, 2016.[4]  The City and County of Denver filed a Reply in Support of its Motion for Summary Judgment (doc. #57) on September 21, 2016.

Also on August 22, 2016, Mr. Perez filed a Request for Leave of Court to Amend Complaint (doc. #45).  Mr. Perez asserted that this belated motion was prompted by "further investigation" and "additional new information" obtained since December 22, 2016.  Plaintiff indicated that he wished to "add three (3) new claims to the Complaint: 1) violation of Plaintiff's Civil Rights for defamation of character; 2) violation of laws governed by the United States Department of Labor and Plaintiffs (sic) Civil Rights for desperate (sic) treatment due to assumed mental condition by Defendant for Hostile Work Environment for hazing and harassment in the work place; [and] 3) violation of the ADA for actions taken, to include a required Fit-For-Duty evaluation because Plaintiffs (sic) is a combat veteran."  Mr. Perez further asserted that his proposed amended complaint would "provide additional undisputed facts referencing" the previously dismissed USERAA claim.

The City and County of Denver filed a Response to Plaintiff's Motion for Leave to

---

[4]Given that Mr. Perez was without counsel during the briefing period relating to Defendant's motion, his submissions must "be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall*, 935 F.2d at 1110 n. 3 (citations omitted).  "[S]uch liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English."  *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citation omitted).  The court cannot be a pro se litigant's advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

Amend Complaint (doc. #54) on September 15, 2016.  Defendant argued that Plaintiff's motion

was untimely given the February 10, 2016 deadline for amending the Complaint and the recently

filed Motion for Summary Judgment.  The City and County also noted that Mr. Perez had been

represented by counsel through the discovery period.

## ANALYSIS

A.    *Defendant's Motion for Summary Judgment*

Defendant City and County of Denver has moved for summary judgment on the narrow

issue of whether a Fire Department employee on October 1, 2011 improperly disclosed

Plaintiff's confidential medical information in violation of § 12112(d) of the ADA.[5]  Defendant

maintains that Captain Wells' statement to Plaintiff's co-workers on October 1, 2011, as well as

a letter sent by the Captain on August 28, 2011, did not disclose confidential medical

information.  More specifically, the City and County of Denver contends that it cannot be liable

for dissemination of medical information that Plaintiff voluntarily disclosed to co-workers on

August 17, 2011 outside the context of a medical examination or inquiry.  Defendant insists that

this undisputed fact "dooms" Plaintiff's remaining claim for relief.

Mr. Perez argues, to the contrary, that he never explicitly stated that he had post-

traumatic stress disorder (PTSD) when he spoke to his co-workers on August 17, 2011, and only

made statements referring to PTSD during a September 7, 2011 interview with Department

officials and subsequent fitness for duty evaluation requested by the Denver Fire Department.

---

[5]In his April 20, 2016 response to Defendant's Interrogatory No. 4, Plaintiff
acknowledged that the only ADA violation asserted in his Complaint concerned "the alleged
unlawful disclosure of [his] medical condition on October 1, 2011."  *See* Exhibit 1 (doc. #57-1)
attached to Defendant's Reply in Support of its Motion for Summary Judgment.

As such, Mr. Perez contends that his confidential medical information was disclosed in violation of § 12112(d).

      1.   <u>Standard of Review</u>

"Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the [materials in the record, including] . . . depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of Cty. Comm'rs*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted); Fed. R. Civ. P. 56(a).

The burden of persuasion under Rule 56 requires the moving party to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *E.E.O.C. v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986)).  While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim.  *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon his pleadings, but must come forward with specific facts

showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *See* Fed. R. Civ. P. 56(e). *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). Conclusory allegations or mere speculation will not create a genuine issue of material fact necessitating trial. *Dobson v. City & Cty. of Denver*, 81 F. Supp. 2d 1080, 1083 (D. Colo. 1999), *aff'd*, 13 F. App'x 842 (10th Cir. 2001). *Cf. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990), *rehearing denied* (Jan. 29, 1991) (acknowledging "conclusory allegations without specific supporting facts have no probative value"). Similarly, evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998), *aff'd*, 185 F.3d 873 (10th Cir. 1999). The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact. *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997) (quoting *Matsushita*, 475 U.S. at 586). After construing the factual record and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party, *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996), *rehearing denied* (Sep. 5, 1996), the court ultimately must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "The very purpose of a

summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

    2.   <u>Undisputed Facts</u>

In his response to Defendant's written discovery, Mr. Perez indicated that the only ADA violation he was asserting in his Complaint concerned alleged disclosures of his medical condition that occurred on October 1, 2011. Specifically, the Complaint alleges that:

> On October 1, 2011, Captain Randy Wells had a meeting with firefighters at Station 9 about Mr. Perez. Mr. Perez was not scheduled to work that day and was not present for the meeting Captain Wells had with firefighters of Station 9. The meeting was to discuss Mr. Perez having PTSD and get the opinion of other firefighters with regards to Mr. Perez having PTSD. Captain Randy Wells also informed the firefighters that he submitted a letter with the request that Mr. Perez be evaluated for PTSD. Captain Wells did not inform Mr. Perez that he was having such a meeting and Mr. Perez was only notified at home via a phone call by another firefighter that this meeting was taking place.

*See* Complaint, at ¶ 27.

After reviewing the parties' briefs and attached exhibits, the court concludes that the following material facts are not in dispute for purposes of the pending motion for summary judgment.[6]

Plaintiff currently is employed by the City in the Denver Fire Department ("DFD") as a Firefighter. On August 17, 2011, Plaintiff was assigned to Engine Company 9, a unit in the chain of command of Captain Randy Wells. On that day, Plaintiff and members of Engine Company 9's B shift were dispatched to a scene where a truck fatally struck a young child. This was emotionally disturbing for Plaintiff because the child was close in age to Plaintiff's son.

---

[6]The court's recitation of undisputed facts is drawn from Defendant's Motion for Summary Judgment (doc. #37), at 2-5, Plaintiff's Opposition (doc. #44), at 3-5, and Plaintiff's Supplement (doc. #50), at 1-2, as well as the exhibits attached thereto.

Captain Wells asked Plaintiff if he was okay after that call, and Plaintiff said he was.

Later that same day, Plaintiff attended Emergency Medical Services ("EMS") training which included instruction on the application of tourniquets in the field.  The training materials included pictures and statistics from military combat operations in Iraq and Afghanistan.  Plaintiff became visibly upset to the point that he stood up in the middle of training and left the room.  Technician Mike Morris and Captain Wells followed Plaintiff outside and asked if he was okay.  Plaintiff said he needed some time to let some things out.  Mr. Perez has testified that on August 17, 2011, he was upset, tearful, and crying, and was visibly suffering from PTSD.  *See* Exhibit 1 (doc. #37-1) (Deposition of David Perez, at pp. 91:7-14 and 95:12-25), attached to Defendant's Motion.

Based on that day's events, Captain Wells asked Plaintiff if he could perform his duties.  Although Mr. Perez believed that he could, he instead elected to go home early.[7]  *Id.* at pp. 90:9-11.  Captain Wells recognized that Mr. Perez wanted his emotional reaction to the events of August 17, 2011 to remain confidential and "that's the route we going to go as far as [Plaintiff] crying."  *See* Exhibit 1 (Deposition of Randall Wells, at 24:6-14), attached to Plaintiff's Supplement.

Before leaving the firehouse, Mr. Perez decided to speak with the members of B shift to "let them know why [he] was going home because . . . . it was concerning to them about my mental health."  *See* Exhibit 1 (doc. #37-1) (Deposition of David Perez, pp. 90:9-15 and 93:2-11), attached to Defendant's Motion for Summary Judgment.  Plaintiff concedes this decision to

---

[7]Mr. Perez maintains that he "decided to go [home] because he realized there was concern for [him] and he did not want this to be a factor in the work performance of his crew or himself if [he] stayed on shift."  *See* Plaintiff's Opposition, at 3.

speak with his co-workers was purely voluntary on his part.  *Id.* at p. 91:2-6.  Although Plaintiff

does not recall specifically what he said to his co-workers, he did "[tell] them about how I was in

combat, and I lost . . . we lost five Marines in my outfit."  Mr. Perez amplified on his remarks

during his deposition.

> Q.  And you gave their names, didn't you?
> A.  Yes, I did.
> Q.  And you talked about the events of that day, correct?
> A.  Yes.  And about the kid, yes.
> Q.  And about the kid and the tourniquet training . . .
> A.  Yes.

*Id.* at p. 93:12-25.

> Q.  Did anyone say anything to you after you finished speaking?
> A.  They made comments of  – like, more supportive comments.  Exactly what
> they said, I don't recall.

> \*   \*   \*

> Q.  Were people generally supportive?
> A.  Yes.
> Q.  Did you tell people that you had sought or were receiving treatment?
> A.  Yes.
> Q.  Did you say where you sought or were receiving treatment?
> A.  The VA.
> Q.  And did you say you were in treatment or that you had been treated or –
> A.  I sought treatment.

> \*   \*   \*

> Q.  Okay.  When you talked to the group and you disclosed that you – based on
> the events of that day, between the traumatic event of the child and the tourniquet
> and bringing up memories of loss in the military, did you think people might
> think, you know, he's got PTSD?
> A.  I don't know what people would think.
> Q.  Were you concerned about people thinking that?
> A.  Yes.
> Q.  But you talked to them anyway?
> A.  Yes.
> Q.  Did anyone ask you afterwards about PTSD?
> A.  Not that I recall – not that I can recall.

11

*Id.* at pp. 98:1-5 and 20-25, 99:1-25 and 100:1-4.

On August 28, 2011, Captain Randy Wells wrote a letter to Assistant Chief Daniel Garcia requesting that Mr. Perez be evaluated for PTSD.  As Captain Wells explained during his deposition, he submitted that request "based on David's statements to everyone and me," which concerned Plaintiff's "time in Iraq, how that – the EMS class affected him, and that – yeah, overall everything that he said in that meeting."  *See* Exhibit 1 (Deposition of Randall Wells, at pp. 38:10-20 and 40:11-19) attached to Plaintiff's Supplement.  According to Captain Wells, his August 28, 2011 request for an evaluation referenced PTSD

> [b]ecause of what he said about his time in the military, and he was seeing the VA
> – he was seeing somebody at the VA; that tells me that he has had some post-
> traumatic stress, not necessarily that he has a disorder but that he has had some
> post-traumatic stress.

*Id.* at p. 44:18-25.

On or about September 7, 2011, Plaintiff met with Division Chief of Administration Tony Berumen and Assistant Chief Russ Bray to discuss the incident that occurred on August 17, 2011.  Mr. Perez acknowledged during his deposition that he told Division Chief Berumen and Assistant Chief Bray that he had PTSD.  Plaintiff explained that he disclosed his condition

> Because of the situation.  A letter was written on me to be evaluated for PTSD.
> They wanted me to get a fit-for-duty evaluation.  I told them I did not need it
> because I already sought treatment at the VA, and I was continuing treatment at
> the VA.  And so I didn't want to go through the hoops again to do all that.  So in
> disclosing that, I initially agreed to see Karen Jackson, which later turned into me
> going to get a full fit-for-duty evaluation.

*See* Exhibit 1 (doc. #37-1) (Deposition of David Perez, at p. 131:5-13), attached to Defendant's Motion.  Mr. Perez concedes that he has no knowledge that Division Chief Berumen or Assistant Chief Bray shared with anyone else Plaintiff's statements concerning his PTSD treatment.  *Id.* at

p. 132:7-10.

On September 28-29, 2011, Dr. Debra Tasci, Psy.D, a clinical psychologist with Nicoletti-Flater Associates, met with Plaintiff to evaluate his fitness-for-duty as a firefighter. *See* Exhibit 2 (doc. #39) (Declaration of Debra Tasci, at ¶¶ 2-3), attached to Defendant's Motion. On October 10, 2011, Dr. Tasci sent her written report to Division Chief Tony Berumen via U.S. mail. *Id.* at ¶¶ 4 and 8. Dr. Tasci did not communicate or otherwise release any information regarding the fitness for duty examination to anyone outside Nicoletti-Flater Associates before October 10, 2011. *Id.* at ¶ 9. Dr. Tasci found Plaintiff has some symptoms that are consistent with PTSD, but she did not diagnose Plaintiff as having PTSD.[8] *Id.* at ¶¶ 5-6. By her own admission, Dr. Tasci evaluated Plaintiff solely to determine if he was fit for duty as a firefighter. *Id.* at ¶ 7.

Defendant admits, for purposes of the pending motion for summary judgment, that during a meeting with Plaintiff's co-workers on October 1, 2011, Captain Wells stated that Mr. Perez has PTSD and that he (Captain Wells) requested, by letter, that Plaintiff be evaluated for PTSD. At his deposition, however, Captain Wells testified that he never received any information or documentation from a medical provider or mental health therapist indicating that Mr. Perez had PTSD, and that he never asked Plaintiff if he had PTSD.

> Q. Did you ever get information from anyone in the Denver Fire Department or elsewhere that David Perez had a diagnosis of PTSD?
> A. No.

* * *

---

[8]Indeed, Dr. Tasci's report specifically notes that a "Fitness for Duty Evaluation . . . is not meant as a means for providing a mental health diagnosis." *See* Exhibit A attached to Dr. Tasci's Declaration.

> Q.  Do you know if Perez went for a fitness-for-duty examination?
> A.  I do.
> Q.  And was the fitness-for-duty report shared with you?
> A.  No.
> Q.  Was information from the fitness-for-duty report shared with you?
> A.  No.
> Q.  Do you know whether or not the fitness-for-duty report contained a diagnosis of PTSD?
> A.  No.

*See* Exhibit 3 (doc. #37-3) (Deposition of Randall Wells, at pp. 76:25 and 77:1-21), attached to Defendant's Motion.  More to the point, Captain Wells testified, without contradiction, that he never asked Plaintiff if he had PTSD and never received any information or documentation from a medical provider or mental health therapist indicating that Mr. Perez had PTSD.

Notwithstanding the foregoing uncontested facts, Mr. Perez claims there are "numerous material facts" that remain in dispute, such as:

> The intent[9] and disclosure of the letter Randy Wells wrote calling for the evaluation of Mr. Perez for PTSD; the statement Randy Wells made saying Mr. Perez had PTSD; and the position that the Defendant has taken stating Mr. Perez voluntarily told his peers he had PTSD even though no such statement had ever been made prior to October 1, 2011 in which these allegations are made merely through assumption and not facts[.]

*See* Plaintiff's Opposition, at 2.

### 3 Application of § 12112(d)

---

[9]To prove a claim under § 12112(d) based upon the improper disclosure of confidential medical information, a plaintiff must show:  (1) that plaintiff's medical information was obtained through employment-related medical examinations and inquiries, (2) that the information obtained through such means was disclosed by the employer rather than treated as confidential, and (3) that the plaintiff suffered a tangible injury as a result of the disclosure of the confidential medical information.  *See, e.g., Shoun v. Best Formed Plastics, Inc..* 28 F. Supp. 3d 786, 788-89 (N.D. Ind. 2014); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 711 (E.D. La. 2013).  Plaintiff has not cited, and this court's own research has not found, any judicial precedent holding that "intent" is a required element for a claim under § 12112(d).  Therefore, any dispute as to Captain Wells' intent is not material for purposes of the pending motion.

Section 12112(d)(4)(A) of the ADA provides that a covered entity may not require a medical examination or make inquiries of an employee "as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." A covered entity "may make inquiries as to the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). *Cf. Wisbey v. City of Lincoln*, 612 F.3d 667, 673 (8th Cir. 2010) ("employers are permitted 'to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims,' and fitness-for-duty exams are considered a reasonable means of making this determination") (internal citations omitted), *abrogated on other grounds, Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011). However, any information obtained through the foregoing medical examinations or inquires "may be used only in accordance with" the requirements imposed by the statute. *See* 42 U.S.C. § 12112(d)(3)(c) and (4)(c). *Cf. Kingston v. Ford Meter Box Co., Inc.*, No. 3:07-CV-270 RM, 2009 WL 981333, at *9 (N.D. Ind. Apr. 10, 2009) ("Employers may ask employees about their medical information for certain job related purposes, but once that information is obtained, they must keep it confidential[.]"). Stated differently, a covered entity must treat "as a confidential medical record" any information obtained through a voluntary medical examination or inquiry under § 12112(d)(4).[10] *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1046 (10th Cir. 2011).[11] "Disclosure of confidential information obtained through an authorized medical

---

[10]The safeguards afforded by § 12112(d) are not limited to employees with disabilities. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997).

[11]Confidential medical information may only be disclosed to a limited group of individuals, such as the employee's supervisors or managers. *See* 29 C.F.R. § 1630.14(c)

examination would constitute a violation of [§ 12112(d)] and could give rise to a claim under the ADA." *Id.* at 1046-47.

To assert a violation of § 12112(d), a plaintiff must prove, as a threshold matter, that the improperly disclosed information was confidential under the pertinent provisions of the ADA, *i.e.,* derived from an employment-related medical examination or inquiry. *Cf. McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2017 WL 386346, at *12 (N.D. Cal. Jan. 27, 2017). It is equally well-established that an employee's voluntary disclosure of medical information outside the context of an authorized employment-related medical examination or inquiry is not protected under § 12112(d). "[I]f an employer discloses medical information that was voluntarily offered by an employee – outside the context of an authorized employment-related medical examination or inquiry – then the employer is not subject to liability under [§ 12112(d)]." *E.E.O.C.*, 644 F.3d at 1047.

If I construe the evidence proffered by the parties in a light most favorable to Mr. Perez, it appears that on August 17, 2011, Captain Wells and Mr. Perez discussed how Plaintiff might deal with the very emotional circumstances of that day: "what would work best for Dave, maybe going to the clinic if he physically wasn't feeling well, staying there at the station, and we talked about – and I don't know that the context was about him going home for the day." *See* Exhibit 1 (Deposition of Randall Wells, at p. 24:1-5), attached to Plaintiff's Supplement. Mr. Perez concedes that while he "wanted to stay at the firehouse, . . . Lenny Szumski came into my room

---

(although information regarding the medical condition or history of an employee must be collected and maintained on separate forms and in separate medical files, "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations").

and told me that I should go home and be with my family." *See* Exhibit 1 (doc. #37-1) (Deposition of David Perez, at p. 93:4-6), attached to Defendant's Motion.  Mr. Perez subsequently spoke with his co-workers, not at Captain Wells' direction, but rather because Plaintiff "wanted to let them know why I was going home because . . . . it was concerning to them about my mental status." *Id.* at p. 93:8-11.

In *Equal Employment Opportunity Commission v. Thrivent Financial for Lutherans*, 795 F. Supp. 2d 840, 843 (E.D. Wis. 2011), *aff'd*, 700 F.3d 1044 (7th Cir. 2012), the court noted that "courts have consistently held that the confidentiality requirements of [§ 12112(d)(4)] do not protect medical information that is voluntarily disclosed by the employee and, thus, is not acquired as a result of a medical inquiry by the employer." *Cf. Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (concluding that an employee's disclosure made "in confidence" was still voluntary for purposes of § 12112(d) when it was not done pursuant to a FMLA request nor made in response to specific questioning); *Ross v. Advance Am. Cash Advance Centers, Inc.*, 605 F. Supp. 2d 1025, 1032-33 (E.D. Ark. 2009) (concluding employee's disclosure was voluntary when it was done to explain why she requested time off rather than pursuant to an inquiry into her ability to perform job-related functions); *Kingston*, 2009 WL 981333, at *11 (concluding employee's disclosure was voluntary when he disclosed his medical condition prior to a discussion with employer about his need for reasonable accommodations).  Plaintiff concedes that on August 17, 2011, he was visibly suffering from PTSD, and that he voluntarily told his co-workers about his combat experience and seeking treatment from the VA.

Captain Wells' expressions of concern on August 17, 2011 did not rise to the level of a medical inquiry subject to the confidentiality requirements of § 12112(d)(4).  "A general inquiry

directed to an employee by an employer who has no preexisting knowledge that the employee was ill or incapacitated which nonetheless results in the employee sharing medical information will not subject a covered entity to liability under 42 U.S.C. § 12112(d)(4)." *Sheriff v. State Farm Ins. Co.*, No. 3:12-cv-243, 2013 WL 4084081, at *8 (W.D. Pa. Aug. 13 2013). "The statute, by its terms, does not extend protection to all information regarding the medical condition or history of any employee except that which is voluntarily shared by an employee. Rather, it covers information that was obtained pursuant to a medical examination or inquiry." *Id.* at *9.

As the court noted in *Sherrer v. Hamilton County Board of Health*, 747 F. Supp. 2d 924, 932 (S.D. Ohio 2010), a supervisor's question "is everything okay?" does not presumptively equate to an inquiry "into the ability of [the employee] to perform job-related functions" as specified in § 12112(d)(4)(B).   Based upon its review of pertinent case law, the district court concluded that

> claims of illegal disclosure of confidential medical information [should] proceed to a jury when there are facts in the record demonstrating that a supervisor probed an employee for medical information or conditioned the employee's job accommodation or medical leave on the employee's provision of medical information to the supervisor.

*Id.* at 933.[12]   The court granted defendant's motion for summary judgment after concluding that no reasonable fact finder could conclude that Ms. Sherrer disclosed her medical information in

---

[12]The *Sherrer* court based its analysis on the decisions *Doe v. United States Postal Service*, 317 F.3d 339 (D.C. Cir. 2003), *Fleming v. State University of New York*, 502 F. Supp. 2d 324 (E.D.N.Y. 2007), *EEOC v. Ford Motor Credit Company*, 531 F. Supp. 2d 930 (M.D. Tenn. 2008), *Kingston v. Ford Meter Box Company, Inc.*, No. 3:07-CV-270 RM, 209 WL 981333(N.D. Ind. Apr. 10, 2009), and *Ross v. Advance America*, 605 F. Supp. 2d 1025 (E.D. Ark. 2009).

response to a § 12112(d) inquiry.  The same conclusion is warranted in this case.

Captain Wells admits that on August 28, 2011, he sent a letter to Assistant Chief Daniel Garcia requesting that Plaintiff be evaluated for PTSD.  That request, according to Captain Wells, was predicated on the voluntary statements Mr. Perez made on August 17.  Mr. Perez does not recall specifically mentioning PTSD to anyone, including Captain Wells, on August 17, 2011.  However, Plaintiff acknowledges that his comments that day might have caused listeners to think about PTSD.  Construing the facts in a light most favorable to Plaintiff, it would appear that the Captain Wells' references to PTSD in his letter of August 28,2011 and his comments on October 1, 2011, reflected inferences drawn by Captain Wells rather than medical information elicited from by Mr. Perez.  *Cf. E.E.O.C. v. Thrivent Fin'l for Lutherans*, 700 F.3d 1044, 1050 (7th Cir. 2012) (holding the word "inquiries" in § 12112(d) "does not refer to all generalized inquiries, but instead refers only to *medical* inquiries") (emphasis in original).  Captain Wells insists that he never saw the fitness for duty evaluation sent to Division Chief Berumen by mail on October 10, 2011 and was not aware until July 6, 2017 that Plaintiff had been diagnosed with PTSD by anyone.  Mr. Perez has not come forward with specific evidence that would rebut Captain Wells' deposition testimony.

In sum, I conclude that Captain Wells' letter of August 28, 2011 and comments on October 1, 2011 did not violate § 12112(d) of the ADA.  Accordingly, the court will grant Defendant's motion for summary judgment.

II.     *Plaintiff's Request for Leave to Amend Complaint*

Plaintiff Perez moved for leave to amend his Complaint well after the February 10, 2017

deadline set by the court on January 25, 2016 and reiterated in the parties' Rule 16 scheduling

order dated February 18. 2016.  Therefore, the court must start its analysis with Rule 16(b)(4).

As the court noted in *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir.

2008), Rule 16(b) specifically requires the trial court to "'issue a scheduling order' which 'must

limit the time to join other parties, amend the pleadings, complete discovery, and file motions.'"

> When a party seeks to amend a pleading after the scheduling deadline for doing
> so, the application of Rule 16(b)'s good-cause standard is not optional.  To permit
> district courts to consider motions to amend pleadings under Rule 15(a) without
> regard to Rule 16(b) "would render scheduling orders meaningless and effectively
> . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of
> Civil Procedure."

*Id.* at 716 (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and

with the judge's consent."  *See* Fed. R. Civ. P. 16(b)(4).  This "good cause" requirement reflects

the important role a scheduling order plays in the court's management of its docket.  *Cf.*

*Washington v. Arapahoe Cty. Dep't of Soc. Servs.,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting

that a "scheduling order is an important tool necessary for the orderly preparation of a case for

trial").  *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101

(S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial

proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the

case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)

("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline.  *See Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997), *aff'd,* 129 F.3d 116 (4th Cir. 1997)).

Plaintiff's proposed amended complaint seeks to include additional facts that were within his personal knowledge well before the filing of the original Complaint on March 4, 2015, and certainly accessible to Plaintiff's first counsel prior to February 10, 2017.  Mr. Perez also wishes to add three new claims for relief, including a common law claim for defamation, a claim for disparate treatment, and a second ADA claim asserting that Plaintiff was required to take a fitness for duty evaluation because of his status as a combat veteran.  While the court expresses no views on the potential merits of these proposed claims, it cannot be disputed those claims could have been raised by Plaintiff's counsel within the court-imposed deadline for amending pleadings.  *Cf. Roberge v. Lupo LLC*, 254 F.R.D. 21, 23 (D. Me. 2008) (in denying plaintiff's motion for leave to amend filed after the expiration of the deadline for amendment of pleadings,

held that plaintiff "had sufficient evidence to support this claim at the time the original complaint was filed"). *See also Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (holding that the Rule 16(b)(4) "good cause" standard was not met where plaintiffs could have pled their new claim for money damages within the parameters of the court's scheduling order because plaintiffs were well aware of the underlying facts and the various types of relief available).  This is not a case where a party is seeking to amend based on an unanticipated or untimely change in the law. *Compare Pumpco,* 204 F.R.D. at 668 (finding that new law establishing a basis for an additional claim for relief after the deadline to amend had passed constituted good cause to justify an extension of that deadline).

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 653 (S.D. Tex. 2009) (rejected plaintiff's attempt to justify a belated motion to amend by shifting responsibility on to the court; "where plaintiffs 'deliberately chose to delay amending their complaint, . . . a busy court need not allow itself to be imposed upon by the presentation of theories seriatim'").  *See also Transam. Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 590 F. Supp. 2d 1093, 1100-1105 (N.D. Iowa 2008) (concluding that plaintiff's belated motion for leave to amend was not prompted by a change in the law, but rather reflected "second guessing" of earlier tactical decisions to forego those claims; held that plaintiff knew all the circumstances giving rise to the belatedly proposed claim well before the deadline for leave to amend).  The Federal Rules of Civil Procedure will not necessarily protect a party from the unforeseen consequences of their own litigation strategy.  *See Martinez v. Target Corp*, 384 F. App'x 840, 846-47 (10th Cir. 2010) (finding no abuse of discretion in the trial court's denial of

plaintiff's untimely motion for leave to amend; found inadequate plaintiff's explanation that she did not move to amend because she thought her FMLA claim was premature).

Plaintiff argues that his motion to amend should be granted because "the requested amendments will aid in the administration of justice by better framing the legal and factual issues of this case before the court."  This argument rings hollow given Plaintiff's failure to move in a timely manner.  If Mr. Perez was intent on "better framing" the legal and factual issues in this case, his motion should have been filed during the discovery period, not 27 days after Defendant City and County of Denver moved for summary judgment.       *Cf. Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (noting that "[m]uch of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory;" "[t]he decision to grant leave to amend a complaint, after the permissive period, is within the court's discretion and will not be disturbed absent an abuse of that discretion").

This court has an independent responsibility for case management.  *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines").  As the Tenth Circuit has acknowledged, courts have a "high duty to insure the expeditious and sound management of the preparation of cases for trial."

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be

23

broadly remedial, allowing courts to actively manage the preparation of cases for
trial . . .

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996) (quoting *Matter of Sanction*

*of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc)).  Both the court and Defendant City

and County of Denver are entitled to expect that by a date certain, Plaintiff's claims will be fixed

and the case will proceed on that basis.  Based upon Plaintiff's lack of diligence in pursuing his

proposed additional claims, I conclude that Mr. Perez has not sustained his burden under Rule

16(b)(4).  Accordingly, the court will deny Plaintiff's Request for Leave of Court to Amend

Complaint.

## CONCLUSION

For the foregoing reasons, Defendant City and County of Denver's Motion for Summary

Judgment (doc. #37) is GRANTED and Plaintiff David Perez's Request for Leave of Court to

Amend Complaint (doc. #45) is DENIED.

DATED this 20th day of March, 2017.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge